**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LENNIE KIRKLAND, | Civil Action No. 04-1651  (SDW-MCA) |
| Plaintiff, | |
| v. | **OPINION** |
| STAN MORGIEVICH and JOHN DOE and/or JANE DOE, | December 15, 2008 |
| Defendants. | |

**WIGENTON**, District Judge

On April 9, 1991, Plaintiff Lenine Kirkland was driving on the New Jersey Turnpike when he was stopped and searched by Defendant State Trooper Stan Morgievich.  During the course of that stop, illegal narcotics were found.  Kirkland was arrested and subsequently tried and convicted.  His sentence was later vacated, along with many others, at the request of the New Jersey Attorney General based on New Jersey's prior practice of racial profiling.  Kirkland filed a complaint pursuant to 42 U.S.C. § 1983 on April 6, 2004, alleging violations of his Fourth and Fourteenth Amendment rights under the United States Constitution, as well as violations of the New Jersey State Constitution.

Before the Court is Trooper Morgievich's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(c) and for summary judgment pursuant to Rule 56(b). Morgievich argues that the claims in Kirkland's Complaint accrued at the time of his arrest and are therefore barred by the applicable two-year statute of limitations.  Kirkland argues that at minimum, his Fourteenth Amendment claim for selective enforcement based on racial profiling did not accrue until his sentence was vacated and that his Complaint was timely filed within the

two-year statutory period.  This Motion is decided without oral argument pursuant to Fed. R. Civ. P. 78.  Having carefully considered the arguments of the parties and for the reasons stated below, the Motion is granted and the case is dismissed.

## I.    Jurisdiction and Venue

This Court has jurisdiction over Kirkland's §1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343.   The Court exercises pendent jurisdiction over the claims arising under the Constitution of the State of New Jersey.  *See* 28 U.S.C. § 1367.  Because the events that give rise to Kirkland's claims occurred in this District, venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## II.    Factual and Procedural Background

The facts presented here are based on those set forth in Kirkland's Complaint and on facts in the record as presented in the exhibits submitted by the parties with the present Motion. Kirkland, an African-American male, alleges in his Complaint that on April 9, 1991, he was driving his car on the New Jersey Turnpike when he witnessed a New Jersey State Trooper in a patrol car pull beside him, turn to look at him, and then say something into his radio.  (Compl. ¶ 13; Levine Certif. Ex. 3, Kirkland Dep. 11:24–12:12, June 5, 2007.)  Immediately thereafter, Kirkland was pulled over, allegedly without probable cause.  (Compl. ¶ 14.)  After smelling marijuana and seeing a pack of rolling papers fall from Kirkland's pocket as he searched for identification papers, Trooper Morgievich conducted a search of Kirkland's car.  (Levine Certif. Ex. 4, Trial Tr. 9:22–10:20, May 6, 1997.)  When the search uncovered what Trooper Morgievich believed to be illegal narcotics, Kirkland was arrested.  Kirkland alleges that he was the victim of racial profiling at the time he was stopped by Trooper Morgievich.  (Compl. ¶ 16.) Kirkland testified that at the time of his arrest, he believed it to be unlawful.  (Levine Certif. Ex.

3, Kirkland Dep. 7:10-17.)  Kirkland was subsequently tried and convicted of possession of a controlled dangerous substance and sentenced to a prison term of ten to twenty years.

On April 19, 2002, the New Jersey Superior Court vacated Kirkland's conviction and dismissed the indictment.  (Levine Certif. Ex. 2.)  This dismissal was one of eighty-six criminal convictions involving allegations of racial profiling that the New Jersey Attorney General requested to be dismissed on that date. (Levine Certif. Ex. 11.)

Kirkland instituted this action *pro se* on April 6, 2004, pursuant to 42 U.S.C. § 1983.[1]  On July 30, 2004, after an initial screening as permitted by 28 U.S.C. § 1915A, the case was ordered to proceed.  In his Complaint, Kirkland generally alleges he was "denied the right to remain free from unwarranted search and seizure of his person and vehicle by the New Jersey State Police" (Compl. at 1) and that he was the victim of racial discrimination (Compl. ¶ 15).  He also alleges that he was stopped without probable cause and was denied his "right[]to remain free from racial discrimination by police officers" in violation of his right to due process and equal protection under the United States Constitution.  (Compl. ¶ 14.)  Kirkland further alleges he was the target of racial profiling (Compl. ¶ 16), "selective criminal activities" (Compl. ¶ 17), and an "unreasonable search and seizure" (Compl. ¶ 18), all in violation of the New Jersey State Constitution.

Judge Bassler issued an Order dismissing Defendant Governor James McGreevy on December 19, 2005.  On May 9, 2006, Kirkland agreed to voluntarily dismiss Defendant Attorney General Peter Harvey.  Kirkland filed a motion to amend the Complaint on August 23, 2006, and an amended motion to amend the Complaint on September 1, 2006.  Following briefing, oral argument, and supplemental briefing on the motion to amend, Magistrate Judge Madeline C. Arleo denied the motion.  (*See* Orders denying motion to amend, Nov. 17, 2006,

---

[1] Kirkland has been represented by counsel in this matter since December 8, 2005.

Dec. 1, 2008, & Jan. 4, 2007.)  Trooper Morgievich, the only remaining Defendant, filed the current Motion on May 8, 2008.

**III.    Discussion**

    **A.    Rule 56 Summary Judgment**

Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(c) and for summary judgment pursuant to Rule 56(b).  Because both parties rely on facts not contained in the pleadings, the motion will be considered only as one for summary judgment. *See* Fed. R. Civ. P. 12(d).

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant.  It is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986).

Once the moving party meets the initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  The court may not weigh the evidence and determine the truth of the matter but must instead determine whether there is a genuine issue as to a material fact.  *Anderson*, 477 U.S. at

249. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991).

### B. Kirkland's Complaint

The central question before the Court presented by Trooper Morgievich's motion for summary judgment is whether the statute of limitations had expired on Kirkland's claims when he filed his Complaint. Although there was some disagreement regarding the date Kirkland officially filed the Complaint for purposes of calculating the statute of limitations, the operative date is April 6, 2004, when the Complaint was first received by the clerk. *See McDowell v. Del. State Police*, 88 F.3d 188, 191 (3d Cir. 1996) ("Although a complaint is not formally filed until the filing fee is paid, we deem a complaint to be constructively filed as of the date that the clerk received the complaint—as long as the plaintiff ultimately pays the filing fee or the district court grants the plaintiff's request to proceed *in forma pauperis*.").

In order to determine whether the statute of limitations has expired for Kirkland's claims, it is first necessary to determine what those claims are. Although he has been represented by counsel in this action since 2005, Kirlkand filed his Complaint *pro se*. As such, it should be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (*pro se* pleadings, "however inartfully pleaded" are held "to less stringent standards than formal pleadings drafted by lawyers"); *see also U.S. v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). In construing a *pro se* plaintiff's complaint, courts "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3rd Cir. 2003).

In addition to the clearly-articulated allegations of violations of the New Jersey Constitution, the Court construes the Complaint to allege claims pursuant to 42 U.S.C. § 1983

for unlawful search and seizure and false arrest in violation of the Fourth Amendment, as well as

a claim for selective enforcement in violation of the Fourteenth Amendment.  Kirkland's brief

submitted in opposition to the Motion makes various arguments regarding purported claims for

selective prosecution, malicious prosecution, and for conspiracy pursuant to 42 U.S.C. § 1985.

No such claims exist in the Complaint and the arguments presented regarding those claims are

disregarded.[2]

### C.    42 U.S.C. § 1983

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  This provision "creates a species of tort liability."  *Memphis Cmty. Sch. Dist.*

*v. Stachura*, 477 U.S. 299, 305 (1986)).  To establish that a defendant violated a right secured by

the Constitution or laws of the United States, a plaintiff must demonstrate that the defendant

deprived him of such right as charged in the complaint.  *Salerno v. O'Rourke*, 555 F. Supp. 750,

757 (D.N.J. 1983).  A plaintiff must "identify the exact contours of the underlying right said to

have been violated."  *Downey v. Coalition Against Rape and Abuse, Inc*., 143 F. Supp. 2d 423,

437 (D.N.J. 2001) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).  "By

itself, Section 1983 does not create any rights, but provides a remedy for violations of those

---

[2] To the extent the Complaint could conceivably be construed as stating a cause of action under 42 U.S.C. § 1985, that cause of action would be time barred.  *See Hilton v. Whitman*, No. 04-cv-6420 (SDW), slip op. at 20–22 (D.N.J. Dec. 15, 2008) (dismissing plaintiff's § 1985 claims as time-barred).

rights created by the Constitution or federal law." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906–7 (3d Cir. 1997).

### D.    Accrual and Statute of Limitations for § 1983 Claims

State law governs the applicable statute of limitations period for § 1983 claims. *Wallace v. Kato*, 549 U.S. 384, 127 S. Ct. 1091, 1094 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)); *Cito v. Bridgewater Twp. Police Dep't.*, 892 F.2d 23, 25 (3d Cir. 1989). Section 1983 claims are best characterized as personal injury claims and governed by the applicable state's statute of limitations for personal injury claims. *Cito*, 892 F.2d at 25. New Jersey applies a two-year statute of limitations period for personal injury torts. N.J. Stat. Ann. § 2A:14-2. Thus, a § 1983 claim arising in New Jersey has a two-year statute of limitations. *Montgomery v. De Simone*, 159 F.3d 120, 126 n.4 (3d. Cir. 1998); *Cito*, 892 F.2d at 25.

A more challenging issue in § 1983 cases is determining the date of accrual—the trigger that typically starts the clock on the state-based statute of limitations. Accrual of § 1983 claims is a question of Federal law. *See Wallace*, 127 S. Ct. at 1095. Such accrual occurs "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (citations and internal quotation marks omitted) (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (internal quotations and citations omitted)). "'Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable.'" *Id.* at 1097 (quoting 1 C. Corman, Limitation of Actions § 7.4.1. 526–27 (1991)); *see also Montgomery*, 159 F.3d at 126 ("'[T]he limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury

which is the basis of the section 1983 action.'"  (quoting *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991))); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994) (stating, in the employment discrimination context, "[a] claim accrues in a federal cause of action as soon as a potential claimant either is aware, or should be aware, of the existence of and source of an injury . . . not upon awareness that this injury constitutes a legal wrong").

**E.      The Impact of *Heck* and *Wallace* on Accrual of §1983 Claims**

A § 1983 claim is not cognizable if success on such claim would "necessarily imply the invalidity" of an underlying conviction or sentence.  *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).  The Court in *Heck* held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id*.  This has become known as the "*Heck* bar."  It prevents a plaintiff in a § 1983 civil action from pursuing a collateral attack on the validity of his or her conviction or sentence.  *See Id.* at 484.  In *Heck*, a prisoner serving a 15-year sentence for manslaughter filed a §1983 claim seeking monetary damages for allegedly improper actions by two county prosecutors and a state police investigator.  The Court construed Heck's complaint as one for malicious prosecution. The Court found that because an element of a malicious prosecution claim is the termination of the prior criminal proceeding in favor of the accused, such a claim was not cognizable as a § 1983 claim before such termination occurred.  *Id*. at 486–87.  The Court explained that the

"hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* at 486.

In interpreting *Heck*, the Third Circuit held that Fourth Amendment claims brought pursuant to §1983 were not categorically excluded from the *Heck* bar. *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427, 448–50 (3d Cir. 2005). Hence, under *Gibson*, the statute of limitations for certain Fourth Amendment claims might not begin to run at the time of the unlawful action giving rise to the claim. Instead, the Third Circuit held that a fact-based inquiry was required in order to determine whether the particular Fourth Amendment claim would necessarily imply the invalidity of the underlying conviction. *Id.* at 449–50. ("While it is true that some Fourth Amendment claims are not subject to deferral under *Heck*, we conclude that *Heck* does not set forth a categorical rule that all Fourth Amendment claims accrue at the time of the violation.").

Subsequent to *Gibson*, the Supreme Court clarified that the *Heck* bar:

> is called into play only when there exists a conviction or sentence that has *not* been . . . invalidated, that is to say, an outstanding criminal judgment. It delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn.

*Wallace*, 127 S. Ct. at 1097–98 (internal quotations omitted). In other words, the *Heck* bar only applies to postpone accrual of a § 1983 claim if, at the time that the § 1983 claim would normally accrue, there is an outstanding conviction or sentence that has not been invalidated. *See Fox v. DeSoto*, 489 F.3d 227, 234 (6th Cir. 2007) ("In no uncertain terms . . . the Court in *Wallace* clarified that the *Heck* bar has no application in the pre-conviction context."); *Elozua v. New Jersey*, No. 04-cv-2029 (MLC), 2008 WL 370926, at *4 (D.N.J. Feb. 11, 2008), *appeal*

*docketed*, No. 08-1725 (3d Cir. Mar. 10, 2008) ("[I]f a plaintiff is not convicted at the time a Section 1983 claim accrues, the accrual of the claim is not deferred, and that plaintiff must file the claim within the applicable statute of limitations period.").

In *Wallace*, the Supreme Court refused to extend the *Heck* bar to a § 1983 claim for false arrest. The Court held that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 127 S. Ct. at 1100. The Court explained that the *Heck* bar could not apply because at the time the statute of limitations began to run on plaintiff's false arrest claim, "there was in existence no criminal conviction that the cause of action would impugn; indeed, there may not even have been an indictment." *Id*. at 1098. The Court thus refused to extend *Heck* in such a way "that an action which would impugn an *anticipated future conviction* cannot be brought until that conviction occurs and is set aside." *Id*.

**F.    Kirkland's Fourth Amendment Claims**

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "[A] traffic stop will be deemed a reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." *U.S. v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006). Kirkland's Fourth Amendment claim for unlawful search and seizure accrued, and the statute of limitations began to run, on April 9, 1991, when he was stopped by Trooper Morgievich. *See Elozua*, 2008 WL 370926, at *5 (holding that plaintiff's claim for illegal search and seizure accrued at the time of the incident because "plaintiffs were present and thus had knowledge of the alleged injuries"). Kirkland admits that at the time he was stopped, he believed

10

the State Police's actions were unlawful. During his deposition, Kirkland was asked whether "On the stop itself you came to the conclusion that you were illegally arrested?" He answered "Yes." (Levine Certif. Ex. 3, Kirkland Dep. 7:10–17).[3] Even without this admission, Kirkland had reason to know at the time of the stop that it was unlawful because he claims he had not committed—and was never told he was suspected of having committed—any violation of the motor vehicle laws. It is also significant that immediately before he was stopped, Kirkland claims he witnessed a State Trooper in a patrol vehicle pull beside his vehicle, look at him, and say something into his police radio.

The statute of limitations for false arrest, a species of false imprisonment, begins to run as soon as the detainee is held pursuant to legal process (*e.g.*, when bound-over by a magistrate judge or arraigned). *Wallace*, 127 S. Ct. at 1096–97. Although the record is not clear when Kirkland made his first appearance before a New Jersey Court, there is no suggestion it was long after his arrest on April 9, 1991. Under *Wallace*, the *Heck* bar does not apply to delay the

---

[3] Kirkland contends that during his deposition, he was confused by this line of questioning. (Pl.'s Br. 2–3.) When initially asked when he first became aware that he was illegally arrested, Kirkland said "2002" and referenced the "*Kennedy* case." Presumably, Kirkland was referring to *State v. Kennedy*, 247 N.J. Super. 21 (App. Div. 1991), which has been credited for bringing New Jersey's policy of racial profiling into public view. *See Freeman v. State*, 347 N.J. Super. 11, 29–30 (App. Div. 2002) (noting that the existence of racial profiling in New Jersey first came to light in *Kennedy*). Kirkland argues that his reference to the *Kennedy* case, as well as his apparent confusion regarding a motion that was filed on his behalf in his state criminal proceeding raising racial profiling issues, create a genuine issue of material fact sufficient to defeat summary judgment. We disagree. Kirkland clearly admitted he was aware that a violation of his rights had occurred at the time he was stopped and arrested, as evidenced in his deposition transcript:

> Q: Had you ever thought you were illegally arrested prior to the Kennedy case?
> A: Yes.
> Q: When was that?
> A: At the stop itself.
> Q: On the stop itself you came to the conclusion that you were illegally arrested?
> A: Yes.

(Levine Certif. Ex. 3, Kirkland Dep. 10–17.)

accrual of Kirkland's Fourth Amendment claim for false arrest.  There is no dispute that when Kirkland first appeared before a New Jersey Court following his arrest, "there was in existence no criminal conviction that the cause of action would impugn."  *Wallace*, 127 S. Ct. at 1098.  Hence, Kirkland's false arrest claim accrued, and the statue of limitations began to run, at the time of that appearance.  Because his claim was not filed within two years, it is untimely.

Although *Wallace* only directly addressed the issue of whether the *Heck* bar applied to a false arrest claim, its reasoning is equally applicable to a claim for illegal search and seizure.  *See Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) (citing *Wallace* for the proposition that "Fourth Amendment claims as a group do not necessarily imply the invalidity of a criminal conviction, and so such claims are not suspended under the *Heck* bar to suit."); *see also Mallard v. Potenza*, No. 94-cv-222, 2007 WL 4198246, at *3 (E.D.N.Y. Nov. 21, 2007) (noting that courts have found it a "rather modest leap" to extend *Wallace's* holding to search and seizure claims).  Here, as in *Wallace*, there was no conviction in existence at the time the illegal search and seizure took place.  Hence, the *Heck* bar does not apply and the two-year statute of limitations has long expired for that claim.[4]  This Court agrees with other courts in finding that *Wallace* supersedes the Third Circuit's analysis in *Gibson* of § 1983 claims for Fourth Amendment violations.[5]  Kirkland concedes that *Wallace* applies to his Fourth Amendment

---

[4] *See e.g., Telfair v. Tandy*, No. 08-cv-731(WJM), 2008 WL 4661697, at *7 (D.N.J. Oct. 20, 2008) (finding *Heck* inapplicable to plaintiff's Fourth Amendment claims for unlawful search and seizure and false arrest); *Wilson v. Maxwell*, No. 08-cv-4140 (FLW), 2008 WL 4056364, at *5 (Aug. 28, 2008) (same); *Elozua*, 2008 WL 370926, at *6 (same); *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety*, No. 02-cv-5470 (RBK), 2007 WL 1038920, at * 4 (D.N.J. Mar. 29, 2007) (same).

[5] *See Telfair*, 2008 WL 4661697, at *7 (noting that "*Wallace* effectively supersedes the Third Circuit's reasoning in *Gibson*"); *Wilson*, 2008 WL 4056364, at *5 (same); *Clarke v. N.J. State Police*, No. 03-cv-3240 (SRC), 2007 WL 4554254, at *5 (D.N.J. Dec. 20, 2007) ("The Third Circuit's reasoning in *Gibson I* does not survive the Supreme Court's language in *Wallace*."); *Richards v. County of Morris*, No. 07-1995 (WJM), 2007 U.S. Dist. LEXIS 49290, at *15–16 (D.N.J. July 5, 2007) (noting that "*Wallace* effectively supersedes the Third Circuit's reasoning in *Gibson*"); *Gibson*, 2007 WL 1038920, at *4 (concluding, after

claims (Pl.'s Br. 5) and that the *Heck* bar does not defer accrual of those claims.  Because Kirkland did not file his Complaint until after the two-year statute of limitations on his Fourth Amendment claims expired, those claims are dismissed.

### G.    Kirkland's Fourteenth Amendment Claims

A critical issue before the Court is whether Kirkland's claim of selective enforcement due to racial profiling, a violation of his Fourteenth Amendment rights, is subject to the *Heck* bar and thus did not accrue until his conviction was vacated at the request of the New Jersey Attorney General.  In examining the date of accrual for a selective enforcement claim, it is helpful to review the elements of that claim, just as the Supreme Court did for the false arrest claim at issue in *Wallace*.  The elements of a selective enforcement claim are:

> (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

*Zahra v. Southold*, 48 F.3d 674, 683 (2d Cir. 1995); *see also Rose v. Allentown*, 211 F. App'x 133, 139 (3d Cir. 2007) (quoting *Zahra*, 48 F.3d at 683).  In contrast, plaintiffs bringing a claim for selective prosecution must meet two elements:

> First, they must provide evidence that persons similarly situated have not been prosecuted.  Second, they must show that the decisions were made on the basis of an unjustifiable standard . . . such as race, religion, or other arbitrary classification . . . or to prevent the defendant's exercise of a fundamental right.

*Gov't of Virgin Islands v. Harrigan,* 791 F.2d 34, 36 (3d Cir. 1986) (internal citations and quotations omitted).  A claim of selective prosecution is "an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."  *U.S. v. Armstrong*,

---

remand from the Third Circuit, "that the Supreme Court's holding in *Wallace* effectively supercedes the Third Circuit's reasoning in its prior decision in this case.").

517 U.S. 456, 463 (1996).  Despite arguments to the contrary, Kirkland has brought no such claim.  The allegations in the Complaint are entirely focused on the actions of the State Police, not the prosecutor, and hence can only be construed as a selective enforcement claim. Accordingly, Kirkland's arguments regarding selective prosecution—which are repeatedly intertwined with arguments related to selective enforcement—are unavailing. (*See* Pl.'s Br. 8–10.)[6]

Although the Supreme Court's grant of Certiorari in *Wallace* was limited to a Fourth Amendment false arrest claim, its analysis of that claim's accrual is instructive in considering Kirkland's selective enforcement claim.  A claim for selective enforcement accrues, and the statute of limitations begins to run, at the time of the improper stop, search and seizure.  *See Dique v. Mulvey*, No. 04-cv-563 (KSH), 2008 WL 1882856, at *8 (D.N.J. Apr. 24, 2008), *appeal docketed*, No. 08-2525 (3d Cir. May 19, 2008) (the tort of selective enforcement "is complete once the victim has been selected out of a discriminatory motive to be the target of the enforcement of a law by the enforcers"); *Clarke*, 2007 WL 4554254, at *6 (concluding that a selective enforcement claim accrues at the time of the arrest).  Should the unlawful selective enforcement result in the subject being detained, the applicable claim becomes one for selective prosecution.  This analysis is analogous to that employed in *Wallace*, where the Court found that once a detainee is held pursuant to legal process, his claim for wrongful imprisonment ends and his "unlawful detainment forms part of the damages for the 'entirely distinct' tort of malicious prosecution."  *Wallace*, 127 S. Ct. at 1096.

Kirkland argues that the holding in *Wallace* does not apply to his claim for selective enforcement in violation of the Fourteenth Amendment.  Thus, the argument goes, the *Heck* bar

---

[6] Confusing selective enforcement and selective prosecution claims is not uncommon.  *See Dique*, 2008 WL 1882856, at *8 n.6 (noting that "[t]o the extent that both plaintiff and defendants mixed up selective enforcement with selective prosecution, their arguments were not helpful to the Court").

should apply, making the date of accrual for this claim April 19, 2004, the day his sentence was vacated. Using that accrual date, the Complaint was timely filed within the two-year statute of limitations. To bolster this argument, Plaintiff argues that the Third Circuit's decision in *Gibson* regarding the applicability of the *Heck* bar to a selective enforcement claim is determinative. In *Gibson*, the Third Circuit found that the *Heck* bar applied to a claim for selective enforcement based on racial profiling because "if a person can demonstrate that he was subjected to selective enforcement in violation of his Equal Protection rights, his conviction will be invalid." *Gibson*, 411 F.3d at 440–41. The Court reasoned that "[b]ecause a successful claim of selective enforcement under the Fourteenth Amendment Equal Protection Clause would have necessarily invalidated Gibson's conviction, under the *Heck* deferred accrual rule the statute of limitations did not begin to run until his sentence was vacated and this claim is not untimely." *Id.* at 441. Unfortunately, the Third Circuit did not have the guidance of *Wallace* when it reached its decision in *Gibson,* and has not yet issued an opinion addressing the impact of *Wallace* on its analysis of the selective enforcement claim in *Gibson*.

The Court is aware that the Third Circuit recently issued an opinion in which it held that "*Heck*'s deferred accrual rule applies to allegations of a violation of equal protection, because a successful claim of racially discriminatory enforcement of the law would invalidate the resulting conviction and sentence." *Cook v. Layton*, No. 08-2156, slip op. at 3 (3d Cir. Nov. 19, 2008) (citing *Gibson*, 411 F.3d at 435, 441). The opinion, which is labeled "Not Precedential," does not mention *Wallace* or contain any discussion of that decision's impact on *Heck* or *Gibson*. Without further direction from the Third Circuit, this Court must be guided by the Supreme Court's holding in *Wallace*.

Following the Supreme Court's reasoning in *Wallace*, there is no *Heck* bar to accrual of a selective enforcement claim because at the time such a claim accrues, "there was in existence no criminal conviction that the cause of action would impugn." *See Wallace,* 127 S. Ct. at 1098; s*ee also Eidson v. Tenn*., 510 F.3d 631, 40 (6th Cir. 2007) (noting that "irrespective of the difference between types of § 1983 claims asserted, the rule of *Heck* cannot be divorced from its post-conviction setting.  This is the teaching of *Wallace*."); *Fox v. DeSoto*, 489 F.3d 227, 234 (6th Cir. 2007) ("[T]he *Heck* bar has no application in the pre-conviction context.").  To hold otherwise would be to create exactly the situation the Supreme Court sought to avoid:  a rule where "an action which would impugn an *anticipated future conviction* cannot be brought until that conviction occurs and is set aside." *Wallace*, 127 S. Ct. at 1098.  Accordingly, this Court joins other Courts in this District in holding that the *Heck* bar does not apply to Fourteenth Amendment claims for selective enforcement based on racial profiling.  *See Dique*, 2008 WL 1882856, at *7–9; *Elozua,* 2008 WL 370926, at *7; *Clarke*, 2007 WL 4554254, at *6; *Richards*, U.S. Dist. LEXIS 49290, at *15–16; *see also Hilton v. Whitman*, No. 04-cv-6420 (SDW), slip op. at 18–19 (D.N.J. Dec. 15, 2008).  *But see Gibson*, 2007 WL 1038920, at *4 (distinguishing *Wallace* and holding that the *Heck* bar does apply to Fourteenth Amendment claims for selective enforcement).

Thus, Kirkland's claim for selective enforcement under the Fourteenth Amendment accrued—and the statute of limitations began to run—on the date he was stopped, searched, and arrested by Trooper Morgievich on April 9, 1991.  Because Kirkland did not file his Complaint until April 19, 2004, long after the two-year statute of limitations had expired, his selective enforcement claim is dismissed.

**H.     Kirkland's Claims Under the New Jersey State Constitution**

Morgievich argues that Kirkland's claims brought under the New Jersey State Constitution must be dismissed for failure to comply with the procedural requirement of the New Jersey Tort Claims Act and because they are time barred under the applicable two-year statute of limitations.  This is only partially correct.  The New Jersey Tort Claims Act, N.J.S.A. 59:1-1, "does not apply to federal and state constitutional claims because a state statute may not abrogate an individual's constitutional rights*." County Concrete Corp. v. Roxbury*, 442 F.3d 159, 174 (3d Cir. 2006) (citing *Greenway Dev. Co. v. Paramus*, 163 N.J. 546 (2000)); *see also Owens v. Feigin*, 394 N.J. Super. 85, 86 (App. Div. 2007).  However, the two-year statute of limitations applies to Kirkland's state law claims.  *See Freeman v. State*, 347 N.J. Super. 11, 20–22 & n.3 (App. Div. 2002) (affirming lower court's application of two-year statute of limitations to claims brought for violations of rights under the New Jersey Constitution).  Kirkland's claims under the New Jersey Constitution are based on the same factual allegations as his § 1983 claims.  As such, those claims also accrued at the time he was stopped and arrested on April 9, 1991.  Accordingly, they are time-barred and are dismissed.

**I.     Equitable Tolling**

Kirkland argues that accrual of his § 1983 claim should be "deferred due to the dishonest concealment by Defendants of the selective enforcement program."  (Pl.'s Br. 11.)  The essential argument is that because New Jersey's policy of racial profiling was concealed, Kirkland cannot be charged with knowledge that the initial stop was the result of racial profiling, and as such, the statute of limitations should be equitably tolled.  Federal Courts generally look to state law for applicable tolling rules.  *Wallace*, 127 S. Ct. at 1099–1100; *Wilson v. Garcia*, 471 U.S. 261, 269 (1985).  Under New Jersey law, a statute of limitations can be tolled for statutory or equitable

reasons.  Bases for statutory tolling include minority status, insanity, and non-residency of liable persons.  N.J. Stat. Ann. §§ 2A:14-21, 14-22 (2007).  None of those apply here.  Bases for equitable tolling include where the claimant: (1) "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass"; (2) "has in some extraordinary way been prevented from asserting his rights"; and (3) "has timely asserted his rights mistakenly by either defective pleading or in the wrong forum."  *Freeman v. State*, 347 N.J. Super. at 31 (internal quotations and citations omitted).  "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice."  *Id.* (citing *U.S. v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)).

When state tolling rules contradict federal law or policy, federal courts can apply federal equitable tolling doctrine.  *Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000).  The bases for equitable tolling under federal law are similar to those employed in New Jersey, namely:

> (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.

*Lake*, 232 F.3d at 370 n.9 (citing *Oshiver*, 38 F.3d at 1387).

Generally, New Jersey's concealment of the pervasiveness of racial profiling does not justify tolling of the statute of limitations period.  *See Freeman*, 347 N.J. Super. at 11 (rejecting plaintiff's argument for equitable tolling based on the lengthy concealment of racial profiling); *But see Dique*, 2008 WL 1882856, at *23 (applying equitable tolling to selective enforcement claim but finding claim was nonetheless time barred because it was filed after the two-year statute of limitations had expired).  Such concealment does not "bespeak[] the kind of trickery or

misconduct that would justify the application of equitable tolling." *Freeman*, 347 N.J. Super. at 11. Moreover, Kirkland does not allege that Trooper Morgievich induced, tricked, or actively misled him regarding his selective enforcement claim.

Even if this Court was to determine that New Jersey's concealment of its policy of racial profiling was, for example, an extraordinary circumstance warranting equitable tolling, Kirkland's Complaint is still time barred. Assuming that Kirkland was not immediately aware that the traffic stop may have been motivated by a policy of racial profiling (despite his deposition testimony to the contrary), he was certainly aware of it when his attorney filed a motion to suppress the evidence discovered as a result of the allegedly unlawful stop. Although the exact date of the motion to suppress is not in the record, it was on or before May 6, 1997, the date Trooper Morgievich testified at Kirkland's trial. (Pl.'s Br. 2; Levine Certif. Ex. 4.)

In making his argument for equitable tolling, Kirkland relies on a certification by William H. Buckman, Esq., who apparently has been involved in many racial profiling cases since 1990. (Levine Certif. Ex. 15, Buckman Certif., Jul. 24, 2001.) Mr. Buckman states that none of the materials evidencing New Jersey's racial profiling practices were "known to litigants . . . until the release of The Interim Report [of the State Police Review Team Regarding Allegations of Racial Profiling, dated April 20, 1999] and, more importantly, the release of 90,000 pages of discovery in November 2000." (*Id.*) Even if the statute of limitations was tolled until November, 2000, it would have expired in November 2002. Kirkland's Complaint was not filed until April, 2004, one year and five months too late. Regardless, it is not necessary to pick a date on which tolling ended because Kirkland has not established he is entitled to equitable tolling in the first instance.

**IV.   CONCLUSION**

All of Kirkland's claims are barred by the two-year statute of limitations.  Because there is no genuine issue of material fact for trial, Trooper Morgievich's motion for summary judgment is granted and the case is dismissed.


**SO ORDERED**.

s/ Susan D. Wigenton, U.S.D.J.


cc: Judge Madeline Cox Arleo, U.S.M.J.